**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JESUS CASTILLO-MENDEZ,
*Defendant-Appellant.*

No. 15-50273

D.C. No.
3:14-cr-03299-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted December 7, 2016
Pasadena, California

Filed August 21, 2017

Before: Stephen Reinhardt, A. Wallace Tashima,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Criminal Law

The panel reversed a conviction for attempted illegal reentry and remanded for a new trial.

The panel held that the district court's supplemental instruction in response to the jury's request for clarification with respect to the meaning of specific intent to enter free from official restraint was erroneous. The panel held that the supplemental instruction, drawing from "found in" cases: (1) erroneously focused on whether the defendant was, in fact, under official restraint, which is irrelevant to the crime of attempted illegal reentry; and (2) erroneously stated that the defendant "need not be aware" of official restraint, confusingly and inaccurately suggesting that his mental state was irrelevant.

The panel concluded that the confusing and legally inaccurate supplemental instruction failed to remove the jury's confusion about this important issue, and that it is therefore not clear beyond a reasonable doubt that a rational jury would have convicted the defendant on this record.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kurt D. Hermansen (argued), Law Office of Kurt David Hermansen, San Diego, California, for Defendant-Appellant.

D. Benjamin Holley (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Jesus Castillo-Mendez appeals his conviction for attempted illegal reentry, a violation of 8 U.S.C. § 1326(a), (b). One of the elements of attempted illegal reentry is that the defendant specifically intend to reenter the United States free from official restraint. At trial, Castillo-Mendez argued that the government failed to prove that he attempted to enter the country with the requisite intent. To the contrary, he argued that when he crossed over the border he did so with the intent to escape smugglers he believed would harm him. During deliberation, the jury, apparently confused with respect to the meaning of specific intent to enter free from official restraint, asked the district court for clarification. In response, the district court provided the jury with a supplemental instruction, which Castillo-Mendez argues was erroneous and prejudicial. We agree. We therefore reverse and remand for a new trial.[1]

---

[1] We have jurisdiction under 28 U.S.C. § 1291.

**I.**

In September 2014, Castillo-Mendez planned to cross the border with two other men, his cousin Nestor Castillo-Ramirez, and a man known only as Teodulo. Teodulo had arranged for smugglers to facilitate the group's entry into the United States.

Prior to their journey across the border, the smugglers housed the three men in a dirty, abandoned building near the border for approximately two days. The building was full of trash, fenced with barbed wire, and lacked a bathroom, electricity, and running water. The group had limited or no food during this time. Nonetheless, Castillo-Mendez and his companions did not believe they could leave the house or abandon their plan for fear of reprisal by the smugglers. Eventually, approximately seven smugglers picked up Castillo-Mendez, Castillo-Ramirez, and Teodulo from the house and took them to the border, all ten men in one pick up truck.

Around six pm, three of the seven smugglers walked the group from the truck up to the border fence, instructing the men that they would watch them cross over from atop a nearby hill. In preparing to cross, the three men noticed a border patrol truck on the other side of the fence, and possibly also a plane flying overhead. The group told the smugglers that they did not want to cross, but the smugglers responded with threatening, aggressive, and frightening comments and told them they had no choice but to cross right then. The group believed that the smugglers might have weapons and feared for their safety. Ultimately, the three men jumped over the fence; Castillo-Ramirez twisted his ankle and Teodulo injured his hand in the process.

Within ten minutes, a border patrol officer encountered and arrested the group. Castillo-Mendez was ultimately charged with attempted illegal reentry under 8 U.S.C. § 1326(a), (b).

At trial, the government sought to prove that Castillo-Mendez specifically intended to enter free from official restraint. As part of the government's affirmative case, Jason LeClaire, a United States Customs and Border Patrol agent, testified that around the time Castillo-Mendez, Castillo-Ramirez, and Teodulo jumped the fence, he noticed a sensor go off suggesting that someone had crossed the border. He further explained that about ten minutes later, he saw a group of three men move from behind a rock pile and head north. He explained that he did not see the men for approximately ten minutes after the sensor alerted. LeClaire alerted another border patrol agent, Kalina Massie, who drove to the location and confronted the men. Massie provided additional testimony, explaining that the men "appeared to be hiding," although she could not recall in what position. Massie testified that when she walked up to the men, Castillo-Mendez stood, raised his hands, and said "you got us." Massie concluded by stating that Castillo-Mendez made no attempt to run or resist arrest and was cooperative in answering her questions.

Castillo-Mendez sought to rebut the government's showing that he specifically intended to enter free from official restraint by showing that he actually intended to flee from the smugglers and enter border patrol custody.[2] To that

---

[2] Castillo-Mendez's counsel also requested an instruction on the defense of necessity, which the district court included in its charge. The

end, Castillo-Mendez and Castillo-Ramirez testified as to their state of mind at the time they crossed the border. Castillo-Mendez explained that when he jumped the border fence, he intended to "free [him]self from the coyotes" and knew that he would be caught by border patrol agents. He further testified that he intended to surrender to the border patrol agents upon entering the United States. Castillo-Ramirez provided similar testimony, explaining that he believed the smugglers would beat them up or kill them if they did not cross over the border, and that he "felt safer with the immigration officers." Castillo-Ramirez added that he knew they would ultimately be caught by border agents.

Castillo-Mendez also testified that the men walked northward after crossing, instead of immediately turning themselves in, because the smugglers were observing them and they feared for their safety. Similarly, Castillo-Ramirez testified that the men did not immediately turn themselves in because they feared the smugglers had weapons pointed at them. Castillo-Mendez testified that when the border patrol agents caught him, he "felt [he]'d been saved." According to Castillo-Mendez, when border patrol encountered them, the men sat on the ground to show that they "were giving up." According to Castillo-Ramirez, the men wanted to surrender but were seated because of his injured ankle. He explained that the men were resting on the ground because they were "tired,[] couldn't walk anymore, [his] ankle was injured, and [they] knew that the Border Patrol was going to get to where [they] were at."

---

necessity defense dovetailed with his theory of the case, that he entered intending to escape dangerous smugglers.

After the defense rested, the district court instructed the jury on the elements of attempted illegal reentry, including, critically, that "[t]he government has to prove that the defendant had the specific intent to enter the United States free of official restraint."**[3]**  After beginning deliberations, the jury submitted two questions to the court: (1) "What does official restraint mean?" and (2) "Does intent to enter start between T.J. [Tijuana] or on the day of the crime? The fence?"

After discussing the first question with the government and defense counsel, the district court instructed the jury that

> For an alien to be under official restraint, that alien must be under continuous governmental observation or surveillance from the moment

---

**[3]** The district court instructed the jury that attempted illegal reentry had six elements: (1) "[T]he defendant had been removed from the United States."  (2) "[T]he defendant had the conscious desire to reenter the United States without consent."  (3) "[T]he defendant was an alien." (4) The defendant "did not have consent . . . to come back into the United States."  (5) "[T]he defendant did something that was a substantial step toward committing the crime of attempted illegal reentry."  (6) "[T]he defendant had the specific intent to enter the United States free from official restraint."  The court derived the first five elements from the Ninth Circuit Committee on Model Criminal Jury Instructions, Manual of Model Criminal Jury Instruction for the District Courts of the Ninth Circuit, 9.7 (2010), and the sixth element from *United States v. Lombera-Valdovinos*, 429 F.3d 927, 928 (9th Cir. 2005).  The Ninth Circuit Committee on Model Criminal Jury Instructions has since amended the model jury instructions to include six elements, much in line with the district court's instructions here.  However, it would be more precise to instruct that attempted illegal reentry has five elements because we have interpreted the second element, "conscious desire to reenter," to mean "specific intent to enter free from official restraint."  *See id.*; *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1225 (9th Cir. 2017).

he attempts to make entry into the United States until the moment he's apprehended. In other words, the person must be under official observation or surveillance at all times during and after he attempts to make physical entry into the United States. Such surveillance can take the form of physical observation by a government official or any kind of electronic surveillance. Additionally, the alien must lack the freedom to go at large and mix with the population. But the alien need not be aware that he's under surveillance. Any alien who is under this kind of sustained surveillance has not entered . . . the United States freely of official restraint.

Castillo-Mendez does not challenge the supplemental instruction the district court gave in response to the second question and accordingly we do not address it.[4]

After the court gave these supplemental instructions, each side was allotted five minutes to make additional arguments.

---

[4] As to the jury's second question, the district court instructed:

[Y]ou should consider all of the evidence bearing on the defendant's intentions, whether arising before, during, or after the moment of the attempted physical entry. . . . However, you may not find that the defendant intended to enter the United States free of official restraint unless . . . the defendant had the required intent to enter the U.S. at the moment he attempted to make entry. [T]here must be a concurrence of the actions that amount to the substantial step or the attempt and the frame of mind of I want to get in without being apprehended.

The jury was then excused, and the district judge acknowledged that the supplemental instruction on official restraint "kind of missed the mark." Defense counsel requested that the district court withdraw the official restraint instruction, but the court responded, "not a chance."

The jury returned a guilty verdict. Castillo-Mendez timely appealed.

**II.**

We review de novo whether the district court's response to a jury question correctly states the law. *United States v. Verduzco*, 373 F.3d 1022, 1030 n.3 (9th Cir. 2004). When a jury demonstrates confusion about a controlling legal principle, we also review whether the district court "eliminated that confusion." *United States v. Walker*, 575 F.2d 209, 213–14 (9th Cir. 1978); *see also Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946) (instructing district courts to "clear . . . away with concrete accuracy" any jury confusion when the jury asks questions); *Verduzco*, 373 F.3d at 1031 (requiring district courts to answer jury questions "with particular care and acumen.").

Even if we determine an instruction was erroneous or failed to clear up confusion, we must still review whether the error was harmless. A jury instruction that erroneously describes an element of the offense "is harmless only if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Liu*, 731 F.3d 982, 992 (9th Cir. 2013) (citation and internal quotation marks omitted).

## III.

### A.

#### 1.

At the outset, we briefly review the development of our attempted illegal reentry law. Section 1326(a) makes it a crime to "enter[], attempt[] to enter or . . . at any time [be] found in, the United States" after a previous removal. 8 U.S.C. § 1326(a). We have held that accordingly, the statute consists of three distinct offenses: completed illegal reentry, attempted illegal reentry, and "found in," illegal reentry. *United States v. Pacheco-Medina*, 212 F.3d 1162, 1165 (9th Cir. 2000). Our early illegal reentry case law held that all three types of illegal reentry were general intent *malum prohibitum* regulatory offenses, wherein the government did not have to prove that the defendant acted under any particular mens rea. *See Pena-Cabanillas v. United States*, 394 F.2d 785, 788–90 (9th Cir. 1968). Thirty years later in *Gracidas-Ulibarry*, we recognized that the statute used the word "attempt," which at common law required the government to show specific intent. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192–95 (9th Cir. 2000) (en banc). We thus made clear that while "found in" and completed illegal reentry are general intent crimes which require no mens rea, attempted illegal reentry is a specific intent crime which requires the government to show the mens rea that the defendant specifically intended to reenter. *Id.* at 1195.

The separate offenses continued to develop on separate tracks in our case law, and today, each separate offense has a unique set of elements. *Vazquez-Hernandez*, 849 F.3d at

1226 ("[T]he elements that the government is required to prove in 'found in' cases are not directly parallel to those required to prove attempted illegal reentry[.]").

We first outlined the elements of attempted illegal reentry in *Gracidas-Ulibarry*. We explained that "(1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) the defendant committed an overt act that was a substantial step towards reentering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry." *Id.* at 1196. We held that the first element, conscious desire to reenter, meant that the defendant had the specific intent to reenter. *Id.* Five years later in *Lombera-Valdovinos*, we specified more precisely that conscious desire to reenter meant specific intent to reenter free from official restraint. 429 F.3d at 928. In doing so, we explained that specific intent to enter free from official restraint meant intent to go "at large within the United States" and "mix with the population." *Id.* at 929 (quoting *United States v. Hernandez-Herrera*, 273 F.3d 1213, 1218 (9th Cir. 2001)).

We then recognized that a defendant charged with attempted illegal reentry can undermine the government's efforts to show specific intent to enter free from official restraint by showing that he entered with the intent to be taken into custody. In *Lombera-Valdovinos*, for example, we held that a defendant who entered intending to be taken into jail did not enter with the specific intent to be free from official restraint because he made "no effort to evade official

restraint" and instead "*sought* such restraint." *Id.* at 930 (emphasis in original); s*ee also United States v. Argueta-Rosales*, 819 F.3d 1149, 1156–57 (9th Cir. 2016) (holding that a defendant who believed he was chased by an armed gunman entered the United States to seek border patrol custody and lacked intent to enter free from official restraint).

We recently described another way that a defendant charged with attempted illegal reentry can undermine the government's showing that he specifically intended to enter free from official restraint: by showing that he entered knowing he was under official restraint. In *Vazquez-Hernandez*, the defendant washed car windows each day in the border crossing pre-inspection area, technically on the United States side of the border. 849 F.3d at 1223, 1227. The defendant argued that he did not intend to enter free from official restraint because he knew he was under constant government surveillance from his daily experience in the area. *Id.* We held that a defendant who knew he was under constant government surveillance did not enter with the intent to be free from official restraint. *Id.* at 1227. In other words, another way to show a lack of specific intent to go at large in the United States is through a lack of intent to evade or be free from constant government surveillance. *Id.* (describing the standard as "intent to evade official surveillance"); *see also Lombera-Valdovinos*, 429 F.3d at 930 (suggesting, without clearly holding, that knowledge of constant surveillance is one way to show a lack of intent to go at large).

**2.**

Here, Castillo-Mendez's defense relied on our cases holding that a defendant who intended to enter border patrol

custody did not specifically intend to enter free from official restraint. *Argueta-Rosales*, 819 F.3d at 1156–57; *Lombera-Valdovinos*, 429 F.3d at 928. The central issue at trial was whether Castillo-Mendez crossed the border intending to flee from his smugglers and be taken into custody, or rather did so with the specific intent to enter without apprehension and roam freely in the United States.

As previously noted, the jury seemed to struggle with this very question. Initially, the district court had instructed the jury that "specific intent to enter the United States free of official restraint" was an element of the crime. The jury asked what official restraint meant in reference to Castillo-Mendez's requisite intent,[5] and when intent is formed. The jury's questions reveal that they were confused regarding the district court's instruction on specific intent to enter free from official restraint, which was central to Castillo-Mendez's defense. *Walker*, 575 F.2d at 213 ("On appeal, we may infer from questions asked by the jury that it was confused about a controlling legal principle.").

Instead of clearing up the jury's confusion regarding specific intent to be free from official restraint, the district court provided the jury with a misleading supplemental instruction. The district court instructed "For an alien to be under official restraint, that alien must be under continuous governmental observation or surveillance . . . . But the alien need not be aware that he's under surveillance." The district court drew this supplemental instruction from our "found in" case law. Castillo-Mendez's counsel objected to the

---

[5] The sole place that "official restraint" arose in the district court's charge was in reference to the requisite mens rea, or the specific intent to enter free from official restraint.

supplemental instruction precisely because it derived from "found in," not attempt, cases, but the district court responded "I really don't understand why you contend there would be a distinction between whether it's a found-in or an attempted case."[6]  There are, however, as discussed *supra*, significant differences between the separate offenses of "found in" and attempted illegal reentry.  By relying on "found in" rather than attempted illegal reentry cases, the district court committed two major errors in its supplemental instruction.

First, the district court's instruction erroneously focused on whether Castillo-Mendez was, in fact, under official restraint when he entered.  The district court began its supplemental instruction with "For an alien to be under official restraint . . . ," and each subsequent sentence addressed *when* a defendant is under official restraint.[7]  Whether a defendant was actually under official restraint at the time he entered, however, is irrelevant to the crime of

---

[6] We are sympathetic to the district court's error as our Model Criminal Jury Instructions are far from a model of clarity on this point. Although the jury instructions recognize the three distinct offenses in the separate instructions for completed (9.6), attempted (9.7), and "found in"(9.8) illegal reentry, the various commentary are less than clear in adhering to these distinctions.  Ninth Circuit Committee on Model Criminal Jury Instructions, Manual of Model Criminal Jury Instruction for the District Courts of the Ninth Circuit, 9.6–9.8 (2010, rev'd 2017).  For example, the commentary for completed illegal reentry, a crime which has no mens rea element, suggests that the mens rea is specific intent, and cites to attempted illegal reentry cases. *See id.* at 9.6; *see also Gracidas-Ulibarry*, 231 F.3d at 1195.

[7] Moreover, in the government's supplemental argument, the prosecutor suggested that the jury should look to the fact of official restraint in determining Castillo-Mendez's intent when he crossed the border.

attempted illegal reentry. In attempted illegal reentry cases, official restraint functions only as a way of elucidating the defendant's requisite mens rea of specific intent to enter free from official restraint. The only element of attempted illegal reentry which makes reference to official restraint is the mens rea element of "specific intent to reenter 'free from official restraint.'" *See Lombera-Valdovinos*, 429 F.3d at 929. What matters therefore in attempted illegal reentry cases is the defendant's state of mind–regardless of whether he was, as a matter of fact, under official restraint. In "found in" cases, on the other hand, the government must prove that at the time a defendant entered, he was free from official restraint as a matter of fact, irrespective of his knowledge or intent to avoid that restraint. *United States v. Bello-Bahena*, 411 F.3d 1083, 1087 (9th Cir. 2005); *see also United States v. Leos-Maldonado*, 302 F.3d 1061, 1063–64 (9th Cir. 2002) (distinguishing between fact of official restraint and intent, and holding that the former is not required for attempted illegal reentry but the latter is).

The supplemental instruction should have instead focused on Castillo-Mendez's specific intent to enter without being apprehended–without making reference to the factual matter of whether he was under official restraint when he attempted to enter. For example, the court could have reminded the jury of its original charge, that the jury must find that the defendant specifically intended to enter free from official restraint, and, as used in that context, official restraint means being detected, apprehended, and prevented from going at large within the United States, or mixing with the population. *Lombera-Valdovinos*, 429 F.3d at 929–30.

Second, and as a result of the first error, the district court erroneously instructed the jury that the defendant "need not

be aware that he's under surveillance" or official restraint. Because "found in" is a general intent crime, *see Gracidas-Ulibarry*, 231 F.3d at 1195; *Matter of Pierre et al.*, 14 I. & N. Dec. 467, 469 (BIA 1973), the government can prove the fact of official restraint in "found in" cases "regardless of whether the alien was aware of the surveillance or intended to evade inspection." *United States v. Ruiz-Lopez*, 234 F.3d 445, 448 (9th Cir. 2000); *see also Pacheco-Medina*, 212 F.3d at 1164 (citing *Matter of Pierre*, 141 I. & N. Dec. at 469) (explaining that official restraint can be "unbeknownst to the alien"). By drawing from "found in" cases, the district court's instruction told the jury that it did not matter whether Castillo-Mendez knew or did not know about official restraint, or in effect, that his mental state was irrelevant.

This cannot be correct, as the critical inquiry in attempted illegal reentry cases is the defendant's mental state–whether he specifically intended to enter free from official restraint. *Lombera-Valdovinos*, 429 F.3d at 929. Unlike "found in" illegal reentry, attempted illegal reentry is a specific intent crime, and the government must show specific intent to enter free from official restraint as an element of the crime. *Id.* at 928; *Gracidas-Ulibarry*, 231 F.3d at 1195. Whether a defendant knew about official restraint may well be relevant to this inquiry. For example, Castillo-Mendez's testimony that he saw a border patrol car and plane before he crossed bolstered his defense that he entered intending to go into custody. Likewise, in *Vazquez-Hernandez* the defendant's argument that he knew he was under surveillance at the border supported his defense that he did not enter intending to go at large in the United States. 849 F.3d at 1227. By drawing from "found in" cases, and stating that Castillo-Mendez "need not be aware" of official restraint, the district court suggested that his mental state was irrelevant; a result

that is confusing and legally inaccurate. It was error for the district court to have included this sentence.**[8]**

In sum, instead of clearing up the jury's confusion and responding with legal accuracy, the district court drew from inapposite "found in" illegal reentry cases, which led it to provide a legally incorrect answer that further confused the jury. *Walker*, 575 F.2d at 213 (citing *Powell v. United States*, 347 F.2d 156, 158 (9th Cir. 1965)) (instructing district courts not to "confuse or leave an erroneous impression in the minds of the jurors"). We must decide whether these errors were prejudicial.

**B.**

We reverse and remand for a new trial where a district court's supplemental instruction failed to clear away jury confusion with its answer or when the answer was legally incorrect, and when such error or confusion was prejudicial to the defendant. *Id.* at 214 (reversing even where the court's statement was legally correct but "when viewed in light of the jury's [] question [wa]s confusing"). An erroneous jury instruction that describes an element of the offense "is harmless only if it is clear beyond a reasonable doubt that a

---

**[8]** Castillo-Mendez also argued that the district court erred in discussing constant surveillance throughout its supplemental instruction. We agree that given Castillo-Mendez's theory of the case, that he entered intending to be taken into custody, it would have been clearer had the district court focused its supplemental instruction on intent to enter without being apprehended, rather than repeatedly discussing constant surveillance. By contrast, in a case like *Vazquez-Hernandez* where the defendant's theory relied principally on his knowledge of constant surveillance, an instruction focusing on constant surveillance might be appropriate. 849 F.3d at 1227.

rational jury would have found the defendant guilty absent the error." *Liu*, 731 F.3d at 992 (internal quotation marks and citation omitted). Here, the district court's legally erroneous and confusing supplemental instruction was prejudicial.

Specific intent to enter free from official restraint is an element of attempted illegal reentry and here it was the central and contested issue at trial. *Gracidas-Ulibarry*, 231 F.3d at 1190. Nearly all of the testimony and evidence focused on whether Castillo-Mendez intended to enter "free from official restraint" or if instead he intended to flee from dangerous smugglers and surrender to border patrol agents. There was evidence on both sides. For example, evidence in support of the former interpretation included the fact that he arranged to pay the smugglers only if the border crossing was successful, the border patrol agents' testimony that the men were hiding, and Castillo-Mendez's failure to explain his fear of the smugglers when apprehended. On the other hand, there was evidence in support of the latter interpretation, such as Castillo-Mendez's and Castillo-Ramirez's testimony about their intent to flee from the smugglers, their belief that the smugglers had weapons, and their reasons for sitting on the ground. With clear and legally correct instructions, the jury could have weighed this conflicting evidence, assessed the credibility of the witnesses, and come to a proper determination of guilt or innocence.

This was the central element contested at trial and there is evidence to support either outcome. As demonstrated by its questions, the jury was likely confused about this singularly important issue, and the district court's confusing and legally inaccurate supplemental instruction failed to remove this confusion. *Walker*, 575 F.2d at 213. As a result, it is not clear "beyond a reasonable doubt that a rational jury

would have" convicted Castillo-Mendez on this record. *Liu*, 731 F.3d at 992.

## IV.

For the foregoing reasons, we reverse Castillo-Mendez's conviction and remand for a new trial. On remand, the district court should instruct the jury that to convict Castillo-Mendez of attempted illegal reentry the government must prove specific intent to enter free from official restraint. Should the jury again ask for the definition of official restraint, the district court should remind the jury that official restraint is relevant only as a part of the defendant's requisite mens rea, and answer with a definition drawn from attempted illegal reentry cases, such as "you must find that the defendant had the specific intent to enter free from official restraint, which means intent to enter without being detected, apprehended, or prevented from going at large within the United States and mixing with the population."

**REVERSED AND REMANDED.**