**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Danny MORENO, Defendant–Appellant.**

**No. 95–10549.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1996.

Decided Dec. 13, 1996.

Randall L.K.M. Rosenberg (argued) and Ignacio R. Garcia (on the briefs), Garcia Garcia & Rosenberg, Honolulu, Hawai'i, for defendant-appellant.

Michael K. Kawahara, Assistant United States Attorney, Honolulu, Hawai'i, for plaintiff-appellee.

Before: WALLACE, SCHROEDER, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Danny Moreno appeals from his conviction for possession with intent to distribute cocaine base (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)). He contends that the district court erred by preventing him from presenting a duress defense and testifying regarding his state of mind concerning his fear of violence to himself and his children at the time of the commission of the charged offense. We affirm because the record shows that Moreno failed to establish a prima facie case that he acted under duress, and his proposed state of mind testimony would not have been relevant because it related solely to evidence of a defense the district court properly excluded.

## I.

Honolulu police arrested Moreno at the Honolulu International Airport on May 4, 1994. Moreno's suspicious behavior following his arrival from Los Angeles had attracted the attention of Honolulu Police Department Officer Thomas Krajewski. Officer Krajewski approached Moreno at an exit to the terminal, identified himself as a narcotics investigator, and asked Moreno if he could talk to him briefly. Moreno consented, but appeared nervous. Moreno gave Officer Krajewski permission to inspect his carry-on bag. Officer Krajewski told Moreno that many smugglers tape drugs to their bodies. When Officer Krajewski asked Moreno "Can I search," Moreno fled before Officer Krajewski completed his request for permission to conduct a further search. Officer Krajewski and four officers gave chase as Moreno ran through traffic. Officer Krajewski grabbed Moreno as he was climbing a fence. Moreno kicked Officer Krajewski in the head "a couple of times" before Moreno was subdued. A search of Moreno's person revealed several packages of cocaine base or "crack" taped to his abdomen and thighs.

Prior to trial, Moreno informed the Government that he intended to assert a duress defense. On January 3, 1995, the Government filed a motion in limine. The Government requested that the court strike the proposed defense on the ground that Moreno could not establish a prima facie case of duress. In response, Moreno filed a four page, unsigned typewritten document that contained a narration of facts. It is entitled "Defendant Danny Moreno's Proffer of Evidence."

The narrative sets forth the following factual assertions: A senior member of Moreno's Los Angeles area gang approached Moreno three weeks prior to May 4, 1994, and asked if he knew anyone who could transport crack cocaine to Hawaii. The senior gang member, known to Moreno only as "Joker," told Moreno that Moreno would have to do it himself if he did not find a courier. Moreno was "upset by this conversation" because he was aware of Joker's high status within the gang and his violent reputation. Moreno was aware that Joker had killed a man when a drug deal went "bad."

Approximately two weeks later, Joker approached Moreno outside a convenience store in Wilmington, California. He asked Moreno if he had found a courier. Moreno told Joker he had been unsuccessful. Joker then ordered Moreno to transport the crack cocaine to Hawaii.

Moreno told Joker he could not go to Hawaii because of his parental responsibilities to his two young daughters. Joker replied, "If you don't do this job for me, I'll kill you and have your family killed." Joker stated that Moreno had "pretty little girls" and that he knew they lived with their mother on the "westside." Moreno's daughters and their mother lived on the "westside" of Wilmington.

Joker told Moreno to be ready to go to Hawaii on the morning of May 4, 1994. Joker asked Moreno where he lived so he could take him to the airport. Because Moreno did not want to involve his family, he told Joker he would meet him in the San Pedro YMCA parking lot.

Moreno went to the parking lot on May 4, 1994, intending to talk Joker out of the scheme. He told Joker "I don't want to go." Joker told Moreno that if he did not make this trip, Joker would "take you and your family out." Moreno understood this to mean that he and his family would be killed. Because of this threat, Moreno agreed to follow Joker's instructions. Joker gave Moreno a "multi-colored shirt" so Joker's associates could identify him. Joker instructed Moreno to deliver the drugs to Byron's Restaurant near the Honolulu Airport, and assisted Moreno in taping four packages of crack cocaine to his body. Joker opened his own shirt to reveal a gun tucked into his waistband. He warned Moreno, "Don't try anything funny cause they're going to be watching you." Moreno understood this to mean that Joker's associates would be on the plane or at the airport in Honolulu. Joker told Moreno that Joker's "homeboy" would telephone Joker after the delivery was completed. Joker drove Moreno to the airport and watched him board the plane.

Moreno further alleged that Joker's threats prompted his attempt to escape from the police at the airport. Moreno attempted to flee rather than consent to a pat-down search because he thought that Joker's associates were watching him during his initial encounter with Officer Krajewski. Moreno was fearful that Joker would carry out his threats if he knew that Moreno had "consented to a police search."

On February 14, 1995, Moreno filed a notice of his intention to rely on a mental state defense. Moreno's counsel alleged that he was informed by a psychologist that "members of gangs may have a psychological inability to refuse orders and directions from gang superiors."

On February 15, 1995, the Government filed a motion to strike Moreno's "Notice of intent to rely on mental state defense" on the ground that the proposed expert testimony would not be relevant if the court ruled that Moreno could not present the defense of duress to the jury.

On March 9, 1995, Judge David A. Ezra granted the motion in limine. He ruled that Moreno had failed to present prima facie evidence of duress in his proffer of evidence. The court reserved judgment on the question whether "Moreno will be entitled to present evidence relevant to duress in order to rebut the intent element of the crime with which he is charged."

On June 14, 1995, the Government filed a motion in limine to preclude Moreno from presenting evidence of gang compulsion or coercion to prove the absence of criminal *mens rea.* On June 16, 1995, this matter was reassigned to Chief Judge Alan C. Kay. Moreno filed an opposition to this motion on June 22, 1995. Moreno argued that he "should be allowed to explain why he acted the way he did, and assert that he had no intent to distribute the crack cocaine in question." The Government filed its opposition to the use of evidence of duress to raise a doubt regarding the existence of *mens rea.* The Government argued that *mens rea* is not an element of the crime of possession with intent to distribute cocaine base.

On June 30, 1995, Moreno filed an opposition to the Government's motion in limine to preclude Moreno from presenting evidence of gang compulsion or coercion. Moreno argued that he had a right to present evidence of his state of mind at the time of the offense.

On July 11, 1995, Chief Judge Kay granted the Government's motion in limine to preclude Moreno from introducing evidence of duress because the crime of possession with intent to distribute cocaine base does not

contain a *mens rea* element. The court also ruled that a defendant is not deprived of his constitutional right to testify in his own defense where he or she seeks to testify regarding a defense that has been ruled inadmissible because of a failure to present a prima facie case of duress.

Moreno was convicted after a trial by jury of possession with intent to distribute cocaine base. This timely appeal followed.

### II.

Moreno argues that the facts presented in his proffer of evidence entitled him to assert the defense of duress. A defendant must establish three elements in order to present this defense: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm. *U.S. v. Becerra*, 992 F.2d 960, 964 (9th Cir.1993). "Fear alone is not enough to establish a prima facie case of duress; the defendant must establish all three elements." *Id.*, citing *U.S. v. Jennell*, 749 F.2d 1302, 1305 (9th Cir.1984), *cert. denied*, 474 U.S. 837, 106 S.Ct. 114, 88 L.Ed.2d 93 (1985). A district court's decision to preclude a defense is reviewed *de novo*. *U.S. v. de Cruz*, 82 F.3d 856, 867 (9th Cir.1996).

Moreno failed to offer evidence that would support an inference "that he had no opportunity to avoid violating the law without subjecting himself to further immediate danger." *U.S. v. Atencio*, 586 F.2d 744, 747 (9th Cir.1978). Moreno had a reasonable opportunity to escape Joker's threatened harm at any time between his initial encounter with Joker and his encounter with Officer Krajewski in the Honolulu Airport. During this three week period, Moreno saw Joker on only three occasions. No one else made any threats or appeared to follow Moreno. Joker did not know Moreno's address, or where in the "westside" his daughters could be located. Moreno made no effort to flee or hide. Moreno's failure to present evidence that he lacked a reasonable opportunity to escape the threatened harm precludes his duress defense. *See U.S. v. Bailey*, 444 U.S. 394, 415, 100 S.Ct. 624, 637, 62 L.Ed.2d 575 (1980)

(holding that a criminal defendant charged with escape "must proffer evidence of a bona fide effort to surrender or return to custody as soon as the claimed duress or necessity had lost its coercive force" in order to present a duress or necessity defense).

Moreno argues that *U.S. v. Contento-Pachon*, 723 F.2d 691 (9th Cir.1984), controls this case. His reliance is misplaced. In *Contento-Pachon*, the defendant proffered evidence that Colombian drug traffickers had forced him to transport drugs to the United States. *Id.* at 693. We held that there was a triable issue of fact "whether one in Contento-Pachon's position might believe that some of the Bogota police were paid informants for drug traffickers and that reporting the matter to the police did not represent a reasonable opportunity of escape." *Id.* at 694. We also held that a jury should decide whether it was reasonable to expect "Contento-Pachon, along with his wife and three-year old child, ... to pack his possessions, leave his job, and travel to a place beyond the reaches of the drug traffickers." *Id.* Unlike the defendant in *Contento-Pachon*, however, Moreno presented no evidence that he could not flee from his gang's reach, or that he could not seek help from local law enforcement agencies because they were corrupt and controlled by gang members.

The fact that Moreno claims he was under constant surveillance by Joker's associates during the flight and at the Honolulu Airport does not justify his failure to submit to authorities. Like Moreno, Contento-Pachon claimed "that he was being watched at all times." *Id.* at 695. Contento-Pachon, however, consented to a stomach x-ray "at the first opportunity to cooperate with authorities without alerting the observer." *Id.* Moreno failed to avail himself of a similar, reasonable opportunity to escape from the threatened harm. When Officer Krajewski approached Moreno at the Honolulu Airport, Moreno could have explained to the officer that he had been coerced to transport crack cocaine without appearing to betray Joker's alleged instruction not to "try anything funny." The encounter with Officer Krajewski presented a clear opportunity for Moreno to save himself and alert authorities about the

threat to his family. Instead, he kicked Officer Krajewski in the head twice in his attempt to escape to complete his illegal delivery.

Because Moreno has failed to demonstrate that he did not have the opportunity to escape the threatened harm, we need not discuss the other elements of duress. *Becerra*, 992 F.2d at 964 (citations omitted). The district court did not err in granting the government's motion to strike the proposed defense of duress.

## III.

The constitutional right to testify is found in the Due Process Clause, the Fifth Amendment's guarantee against compelled testimony, and the Sixth Amendment. *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987). Moreno contends that, pursuant to the constitutional right to testify, the district court was required to permit him to explain to the jury that he behaved in the manner that he did because he was acting under duress, whether or not he had demonstrated prima facie evidence of duress.[1] We review *de novo* the question whether a trial court's suppression of a defendant's testimony violates the constitutional right to testify. *See U.S. v. Anderson*, 79 F.3d 1522, 1525 (9th Cir.1996) (*de novo* review for a Fifth Amendment violation); *U.S. v. Benlian*, 63 F.3d 824, 826 (9th Cir.1995) (*de novo* review for denial of a Sixth Amendment right); *U.S. v. Contreras*, 63 F.3d 852, 857 (9th Cir.1995) (same).

The constitutional right to testify is not absolute. *Rock*, 483 U.S. at 55, 107 S.Ct. at 2711. In *Rock*, the Supreme Court referred to this guarantee as "the right to present *relevant* testimony." *Id.* (emphasis added). In addition, the *Rock* Court noted that "[t]he right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Id.*,

quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). Without question, the Government has a legitimate interest in excluding evidence which is not relevant or is confusing under Rule 402[2] and Rule 403[3] of the Federal Rules of Evidence. Evidence of duress is not relevant if the defendant fails to present evidence of a prima facie case of the affirmative defense. *See* Rule 402 (only relevant evidence is admissible).

As discussed above, the district court ruled correctly that Moreno's proffered evidence was insufficient to establish the elements of the defense of duress because he failed to demonstrate that he lacked a reasonable opportunity to escape the threatened harm. At trial, Moreno's counsel told the district court that his client's testimony concerning his state of mind would be consistent with his proffer of evidence. Moreno's attorney stated,

> I would just proffer him at this time as a witness to testify regarding the matters that were set forth in the motion, in the motion in limine hearings and the affidavit; and I would proffer that what I would ask him would be why did he have the drugs with him, and I would proffer that his answer would be, to paraphrase it, would be because he was afraid; and then I would ask the subsequent questions to that.

Since the proposed testimony pertained to a defense that was not relevant as a matter of law, the district court did not err in excluding the evidence during the trial. In *Contento–Pachon*, this court held that "[i]f evidence is insufficient as a matter of law to support a duress defense, ... the trial court should exclude that evidence." 723 F.2d at 693; *see also U.S. v. Dorrell*, 758 F.2d 427, 430 (9th Cir.1985) (holding that if the evidence does not support a defense as a matter of law,

---

1. Prior to trial, Moreno argued that evidence of gang compulsion was admissible to show an absence of *mens rea*. In this appeal, Moreno has abandoned his contention that *mens rea* is an element of the crime of possession with intent to distribute cocaine base.

2. Rule 402 provides in pertinent part:

"Evidence which is not relevant is not admissible."

3. Rule 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of ... confusion of the issues, or misleading the jury."

"the trial court should exclude the defense and the evidence offered in support"); *U.S. v. Alicea*, 837 F.2d 103, 107 (2nd Cir.1988) (holding there was no violation of the right to testify where the trial court excludes the evidence of a duress defense that fails as a matter of law). While the constitutional right to testify permits a defendant to choose whether or not to take the witness stand, it does not authorize a defendant to present irrelevant testimony.

**AFFIRMED.**