# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

GUILLERMO ANTONIO VASQUEZ-
LANDAVER, aka Gabriel Gonzalo
Campos-Landaver,
            *Defendant-Appellant.*

No. 07-50226

D.C. No.
CR-05-00014-
MJL-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Submitted March 5, 2008*
Pasadena, California

Filed May 21, 2008

Before: Kim McLane Wardlaw, Ronald M. Gould,
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

5907

**COUNSEL**

Julie A. Blair, San Diego, California, for the defendant-appellant.

William M. Narus, Assistant United States Attorney, Office of the United States Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

IKUTA, Circuit Judge:

Guillermo Antonio Vasquez-Landaver (Vasquez) appeals his 90-month sentence and underlying conviction for being found in the United States after being deported. He contends: (1) the district court erred in not allowing him to present any evidence of duress and in not giving a jury instruction on a duress defense; and (2) his within-Guidelines sentence is unreasonable and was an impermissible punishment for going to trial. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

I

Vasquez was born in El Salvador in 1971, and first came to the United States at the age of 18. Vasquez has been deported from the United States on eight separate occasions; most recently on September 15, 2004.

On December 10, 2004, Vasquez and five others were arrested by Border Patrol agents in an area near Tecate, California, after agents responded to a seismic intrusion device activation. Vasquez admitted he was a citizen and national of El Salvador, and that he was in the United States illegally. The agents took Vasquez to a border patrol checkpoint station for further processing, where computer checks revealed that Vasquez had an extensive immigration and criminal record and had been frequently deported.

While in custody, Vasquez described his route to the United States as follows:

> [He] left his home in El Salvador on October 17, 2004. He traveled by car, and then bus, to the El Salvador/Guatemala border. Vasquez crossed into Guatemala using an El Salvador border crosser card.

> He then proceeded to travel by raft across a river and into Mexico. Vasquez took various buses and trains north, through various cities of Mexico. He eventually arrived in Mexicali, B.C., Mexico, on November 18, 2004, where he stayed until November 26, 2004. While in Mexicali, he met a smuggler who arranged for his travel into the United States, through the hills near Tecate, California.

On December 13, 2004, the government filed a complaint against Vasquez, charging him with being "found in the United States" after previously being "excluded, deported and removed," in violation of 8 U.S.C. § 1326.[1] Vasquez was indicted by a grand jury for the violation of § 1326 on January 5, 2005.

On February 28, 2006, Vasquez filed a motion in limine which included notice of intent to introduce evidence that his entry into the United States "was by reason of necessity/duress." The motion stated that Vasquez would testify as follows:

---

[1] 8 U.S.C. § 1326(a) provides, in pertinent part:

any alien who —

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years or both.

> Just prior to his attempt to enter the USA, Defen-
> dant[ ] had been threatened by the police in his home
> town in El Salvador. In the past he had been arrested
> by a corrupt officer because he did not pay extortion
> money. After a trial he was found not guilty and the
> officer who had extorted him was arrested tried and
> found guilty. That officer was killed while in jail.
> Other officers had the family of the dead officer to
> this day continue to threaten [Vasquez].[2] As a for-
> mer resident of the USA he fled north. The Govern-
> ment of El Salvador refuses to act. In Mexico,
> asylum is not available to defendant.
>
> He had no other choice but to come to the USA or
> go to war with the El Salvador government.

Vasquez also gave notice of intent to present expert testimony
of an El Salvador police officer, who "[i]n addition to actual
knowledge of defendants [sic] situation in El Salvador by rea-
son of being involved with the police during his trial . . . can
give expert testimony as to the situation generally as to the
inability of persons to obtain relief from the El Salvador gov-
ernment when it is 'OUT TO GET THEM.' "[3]

In its opposition to Vasquez's motion in limine, the govern-
ment asked the district court to preclude Vasquez from pre-
senting the duress theory at trial, arguing that Vasquez failed
to make a prima facie showing of duress. The government
also asked the district court to preclude Vasquez from offer-
ing the proposed expert testimony because it was irrelevant to
the issues in the case and Vasquez had not provided the gov-
ernment any discovery regarding the El Salvador police offi-

---

[2]Although this sentence is not clear, we interpret it as stating that other
officers directed the dead officer's family to continue to threaten Vasquez,
even up until today.

[3]Vasquez also intended to call an expert witness from Amnesty Interna-
tional, but later changed his mind.

cer's qualifications. At the March 13, 2006 motion hearing, the district court stated it would allow Vasquez to testify regarding his reasons for entering the United States, but would not provide a jury instruction on duress. The district court also precluded the expert witness testimony because it would be irrelevant in the absence of sufficient evidence of a duress defense.

Following the hearing, the government moved to preclude Vasquez from testifying to his purported reason for entering the United States. On March 27, 2006, the district court granted the government's motion, and subsequently denied Vasquez's motion to reconsider. During the trial, the court again declined to give Vasquez's requested jury instruction on duress. The jury returned a guilty verdict on one count of violation of 8 U.S.C. § 1326 on May 10, 2006.

At the April 30, 2007 sentencing hearing, Vasquez asked the court to depart from the United States Sentencing Guidelines range of 84 to 105 months calculated in the presentence report (PSR), and instead impose a sentence of 48 months. Vasquez sought such a reduction from the Guidelines range primarily because of his imperfect duress defense and the fact that he had been offered 48 months in an earlier plea bargain. The government argued that the court should consider a Guidelines range of 100 to 125 months, higher than the range calculated in the PSR, on the ground that Vasquez was not entitled to a reduction for acceptance of responsibility. The government sought a 113-month sentence in the middle of that higher range because of Vasquez's violent criminal history. The district court adopted the PSR's guidelines range of 84 to 105 months, and sentenced Vasquez to 90 months. Vasquez timely appealed his conviction and sentence.

## II

Vasquez argues that the district court erred by not allowing him to present evidence regarding his duress defense and not

allowing the jury to consider this theory. We review de novo whether the district court erred in ruling that Vasquez could not present evidence as to his duress defense and in not instructing the jury on this defense. *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996) (evidence); *United States v. Shryock*, 342 F.3d 948, 987 (9th Cir. 2003) (jury instruction).

**[1]** We have long held that a defendant is not entitled to present a duress defense to the jury unless the defendant has made a prima facie showing of duress in a pre-trial offer of proof. *See Moreno*, 102 F.3d at 998-99. Absent such a prima facie case, evidence of duress is not relevant. *Id.* "While the constitutional right to testify permits a defendant to choose whether or not to take the witness stand, it does not authorize a defendant to present irrelevant testimony." *Id.* at 999. Accordingly, a district court may exclude evidence on duress and may refrain from providing a jury instruction on duress where the defendant's proffer failed to make a prima facie showing of the required elements. *See id.* at 998-99; *United States v. Jennell*, 749 F.2d 1302, 1305 (9th Cir. 1984).

**[2]** "A defendant must establish three elements in order to present [a duress] defense: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm." *Moreno*, 102 F.3d at 997. The type of duress or coercion that " 'will excuse the commission of a criminal act must be immediate and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done.' " *United States v. Atencio*, 586 F.2d 744, 746 (9th Cir. 1978) (quoting *United States v. Gordon*, 526 F.2d 406, 407 (9th Cir. 1975)). "Of crucial importance in any attempt to raise duress as a defense are the elements of immediacy and opportunity to avoid the act." *Id.*

**[3]** To establish the element of immediacy, a defendant must make a prima facie showing that the defendant com-

pleted the illegal action under a threat of immediate harm to the defendant or the defendant's family. Under this test, the threat to the defendant or the defendant's family must be "present, immediate, or impending," *United States v. Contento-Pachon*, 723 F.2d 691, 694 (9th Cir. 1984), such that the defendant's persecutors "figuratively held a gun to his head" (or to his family's heads) compelling the defendant to commit the illegal action. *Shryock*, 342 F.3d at 988; *see also United States v. Otis*, 127 F.3d 829, 835 (9th Cir. 1997) ("[A] jury could conclude that [the defendant] was forced to work for the cartel by the threat of a second kidnapping of his father, which would take place immediately if he did not follow orders."). A threat raising "the possibility of action after thirty days" does not meet the requirements of " 'immediacy.' " *Shryock*, 342 F.3d at 987; *see also United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993) (no prima facie showing of immediacy in a year-long scheme to distribute cocaine and heroin even though defendant testified the person that threatened him was in the defendant's restaurant "constantly" and "even parked outside [defendant's] apartment on one of his days off").

**[4]** We agree with the district court that Vasquez failed to make a prima facie showing that he committed the crime of illegal entry due to the pressure of "an immediate threat of death or serious bodily injury."[4] *Moreno*, 102 F.3d at 997. Vasquez's motion to the district court did not proffer evidence that failure to enter the United States illegally would immediately result in harm to himself or his family. Even assuming that Vasquez's proffer was credible, Vasquez offered no evidence that he was escaping an immediate threat of harm when he violated the law by crossing the border. *See United States v. Wofford*, 122 F.3d 787, 791 (9th Cir. 1997); *Jennell*, 749 F.2d at 1306; *see also Contento-Pachon*, 723 F.2d at 693

---

[4]Because a "defendant must establish all three elements" of a duress defense, *Becerra*, 992 F.2d at 964, we do not address the remaining elements.

("Factfinding is usually a function of the jury, and the trial court rarely rules on a defense as a matter of law."). There was no evidence of a figurative gun to his head compelling his illegal entry. *Shryock*, 342 F.3d at 988. *Cf. United States v. Solorzano-Rivera*, 368 F.3d 1073, 1076 (9th Cir. 2004) (describing the defendant's testimony that "chased by the police, he jumped over the 15-foot-high border fence, hurting his foot in the process," as "central" to the defendant's duress defense to illegal reentry under § 1326). Also, Vasquez did not offer to testify that any member of his family would suffer immediate harm if he did not violate 18 U.S.C. § 1326. *Cf. Otis*, 127 F.3d at 835. Nor did Vasquez state that he was under constant surveillance for the 53 days[5] between his departure from El Salvador and his entry into the United States from Mexico. *See Wofford*, 122 F.3d at 791.

**[5]** Vasquez argues that he is like the defendant in *Contento-Pachon*, who succeeded in making a prima facie showing of duress. *Contento-Pachon* does not help Vasquez. In that case, the defendant agreed to smuggle 129 balloons of cocaine from Colombia into the United States after a drug smuggler told him that "his failure to cooperate would result in the death of his wife and three year-old child." 723 F.2d at 693. The drug smuggler also informed the defendant "that he would be watched at all times during the trip." *Id.* Moreover, the person who threatened Contento-Pachon, "had gone to the trouble to discover that Contento-Pachon was married, that he had a child, the names of his wife and child, and the location of his residence." *Id.* at 694. Because large sums of money were at stake, the defendant had reason to believe the threats would be carried out. *Id.* Given evidence that the defendant was under constant surveillance, and thus under an ongoing threat of retaliation while undertaking the drug smuggling activity, we held that Contento-Pachon's "contention that he

---

[5]The district court erroneously calculated that time period as 56 days, but at the same hearing the government clarified that Vasquez's trip lasted 53 days.

was operating under the threat of immediate harm was supported by sufficient evidence to present a triable issue of fact." *Id.*; *see Wofford*, 122 F.3d at 791 ("[T]he threat to Contento-Pachon was immediate because it was still continuing — if his testimony was believed, Contento-Pachon was under constant surveillance. . . while he committed the illegal acts."). Although Vasquez argues that like the defendant in *Contento-Pachon*, he "was repeatedly threatened by the corrupt police officer's family and other officers," Vasquez's allegations of vague threats by unnamed individuals in El Salvador are far removed from Contento-Pachon's allegations that he faced specific threats of immediate harm during the entire period in which he engaged in illegal activity.

[6] Vasquez also contends that the threat he faced was "immediate" because he "believed that he would not be safe from harm either in Guatemala or Mexico — that the United States was the only country which would be willing to help him and potentially grant him asylum and that is why he came here." These assertions are insufficient to make a prima facie case of duress. Vasquez "may have legitimately feared" that the El Salvador police would harm him, but "[f]ear alone is not enough to establish a prima facie case of duress." *Becerra*, 992 F.2d at 964. Regardless whether he was eligible for asylum in those countries, Vasquez did not proffer that he suffered an immediate threat of harm in either Mexico or Guatemala.

[7] Accordingly, we affirm the district court's decision to preclude all evidence on Vasquez's duress defense and its rejection of a duress jury instruction. Vasquez's related argument that he should have been able to testify in further support of his proffer is foreclosed by our decision in *Moreno*. There we held that "[e]vidence of duress is not relevant if the defendant fails to present evidence of a prima facie case of the affirmative defense." 102 F.3d at 998.

III

Vasquez also appeals his 90-month sentence. Vasquez argues the sentence was greater than necessary to meet the goals of 28 U.S.C. § 3553(a) because the district court failed to adequately consider sentencing disparities between the 90-month sentence and the 48-month sentence offered to Vasquez and similarly situated defendants to enter fast-track plea agreements.[6] He also argues that the 90-month sentence is an impermissible punishment "for exercising his constitutional right to trial." We affirm the district court's sentence.

A

We first address Vasquez's contention that his sentence was greater than necessary, and thus, unreasonable.

[8] "Appellate review is to determine whether the sentence is reasonable." *United States v. Carty*, No. 05-10200, 2008 U.S. App. LEXIS 6084, at *16 (9th Cir. Mar. 24, 2008) (en banc). As we recently explained:

> [t]he overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with

---

[6]Under U.S.S.G. § 5K3.1, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." The fast-track program is one such "early disposition program," § 5K3.1, under which federal prosecutors in districts along the United States-Mexico border offer "shorter sentences to defendants who plead[ ] guilty at an early stage in the prosecution and agree[ ] to waive appeal and other rights." *See United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006).

needed educational or vocational training, medical care, or other correctional treatment.

*Id.* at *11-12 (quoting 18 U.S.C. § 3553(a)). While a district court commits procedural error if it fails to consider the § 3553(a) factors, including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," § 3553(a)(6), it "need not tick off each of the § 3553(a) factors to show that it has considered them. We assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors, not just the Guidelines." *Carty*, 2008 U.S. App. LEXIS 6084, at *16. We review all sentencing decisions for abuse of discretion. *Id.* at *16-17.

**[9]** The district court adequately explained its decision to give Vasquez a within-Guidelines sentence of 90 months. *See id.* at *25-26 (noting that, except in an unusual or complex case, a district court need not provide much explanation for a within-Guidelines sentence). The district court was aware of Vasquez's request for the same 48-month sentence that the government had offered in a plea agreement, but which Vasquez had rejected. After discussing the § 3553(a) factors, and explicitly recognizing both the "need to avoid unwarranted sentence disparities among defendants with similar records who are also guilty of similar conduct," and "that the sentence. . . is sufficient but not greater than necessary to reflect the seriousness of the offense," the district court decided to impose the within-Guidelines 90-month sentence. The sentence was reasonable and the district court's refusal to give Vasquez the 48-month sentence was not an abuse of discretion. *See United States v. Reina-Rodriguez*, 468 F.3d 1147, 1158-59 (9th Cir. 2006), *overruled in part on other grounds by United States v. Grisel*, 488 F.3d 844, 851 n.5 (9th Cir. 2007) (en banc); *United States v. Marcial-Santiago*, 447 F.3d 715, 718-19 (9th Cir. 2006). Nor was the district court required to explicitly mention the types of sentences received

by otherwise similarly situated defendants who pleaded guilty. *Carty*, 2008 U.S. App. LEXIS 6084, at *16.

## B

We also reject Vasquez's argument that his sentence was an impermissible punishment for exercising his constitutional right to trial.

**[10]** "When a defendant voluntarily chooses to reject or withdraw from a plea bargain, he retains no right to the rejected sentence." *United States v. Carter*, 804 F.2d 508, 513 (9th Cir. 1986).

> [A]s long as there is no indication the defendant has been retaliated against for exercising a constitutional right, the government may encourage plea bargains by affording leniency to those who enter pleas. Failure to afford leniency to those who have not demonstrated those attributes on which leniency is based is unequivocally . . . constitutionally proper.

*United States v. Narramore*, 36 F.3d 845, 847 (9th Cir. 1994) (internal citations and quotation marks omitted) (second alteration in original). However, a higher sentence is impermissible where the district court imposes it to punish the defendant for asserting the constitutional right to trial by jury. *Carter*, 804 F.2d at 513; *see also, e.g.*, *United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir. 1982) (vacating a sentence where the district court's reference to the costs of trial and statements such as, " '[i]ts [sic] obvious to me that this man wanted a trial, with all his constitutional rights, and he insisted upon them and he had them," gave rise to the inference that the defendant was punished more severely because of his exercise of his right to trial).

**[11]** Here, nothing in the record suggests that the district court imposed the within-Guidelines 90-month sentence in

retaliation for Vasquez's going to trial. Although Vasquez asserted his right to trial, the district court decreased his offense level by two points for acceptance of responsibility. *See also United States v. Espinoza-Cano*, 456 F.3d 1126, 1137 (9th Cir. 2006) (noting that it is "possible for a defendant both to exercise his right to a trial and to demonstrate acceptance of responsibility"); *United States v. Gonzalez*, 897 F.2d 1018, 1020 (9th Cir. 1990). In the absence of any evidence that the district court's decision was improperly motivated, defendant's argument that the higher sentence is impermissible is foreclosed by *Carter*. *See* 804 F.2d at 513 ("Mere imposition of a heavier sentence [after a defendant rejects a plea bargain], without more, does not invalidate it."). The record does not suggest that the district court gave any improper weight to the failure to enter the plea agreement proposed by the government. *See id.* at 514.

## IV

Because Vasquez failed to make a prima facie showing of an immediate threat, the district court properly precluded Vasquez from introducing any evidence on a duress defense and properly declined to instruct the jury on duress. We affirm the district court's 90-month sentence as reasonable. The district court did not abuse its discretion in declining to give Vasquez the same 48-month sentence offered to Vasquez and similarly situated defendants as a plea bargain. Nothing in the record suggests Vasquez's sentence was imposed to punish him for exercising his constitutional right to a trial.

**AFFIRMED.**