**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

    v.

CHRISTOPHER IBARRA-PINO,
          *Defendant-Appellant.*

No. 10-50341

D.C. No.
3:09-cr-03768-L-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, Senior District Judge, Presiding

Argued and Submitted
June 10, 2011—Pasadena, California

Filed September 20, 2011

Before: Alex Kozinski, Chief Judge, Sandra S. Ikuta,
Circuit Judge, and Susan R. Bolton, District Judge.*

Opinion by Judge Bolton;
Concurrence by Chief Judge Kozinski

---

*The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

17863

**COUNSEL**

Janet C. Tung, Federal Defenders of San Diego, Inc., San Diego, California, for defendant-appellant Christopher Ibarra-Pino.

Daniel E. Butcher, Assistant United States Attorney, San Diego, California, for plaintiff-appellee United States.

**OPINION**

BOLTON, District Judge:

Christopher Ibarra-Pino ("Ibarra") appeals from his conviction for importation of marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana in violation of 21 U.S.C. § 841(a)(1). He contends, inter alia, that the district court erred by preventing him from presenting evidence of duress at trial and by refusing to give a jury instruction on a duress defense.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

[1]Ibarra raises several other issues in this appeal. In this opinion, we address only Ibarra's contentions regarding the duress defense. We address the remaining contentions in a memorandum disposition filed concurrently with this opinion.

## I.

On September 16, 2009, Ibarra drove a vehicle into the United States at the Calexico West Port of Entry. At the Port of Entry's primary inspection point, Ibarra told the primary inspection officer that he owned the vehicle and was entering the United States to see an Army recruiter. A computer alert on the vehicle indicated that the vehicle might contain illegal drugs and should be referred to secondary inspection. The primary inspection officer escorted Ibarra and the vehicle to the secondary inspection lot and then took Ibarra into the secondary inspection office. Officers found 69 kilograms of marijuana concealed in the vehicle's tires and gas tank and in a manufactured compartment behind the driver's seat.

Ibarra was placed under arrest and, approximately four hours after he was stopped at the border, two Immigration and Customs Enforcement ("ICE") agents interviewed him. Initially, Ibarra told the agents that he was entering the United States in order to work at the Santo Tomas swap meet and denied knowing that there were any illegal drugs in the vehicle. Following thirty-five to forty-five minutes of questioning, Ibarra told the agents that he had been forced to drive the vehicle into the United States by men who threatened to kill him and his family.

Ibarra was charged with importation of marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of marijuana in violation of 21 U.S.C. § 841(a)(1). Prior to trial, the government filed a motion in limine seeking an evidentiary ruling precluding defense counsel from making any comments or eliciting any testimony relating to a duress defense unless Ibarra first made a prima facie showing satisfying the elements of a duress defense. At a March 8, 2010, hearing on the parties' motions in limine, the district court requested additional briefing on the issue of duress and stated that it would grant the government's motion to preclude a duress

defense unless Ibarra could proffer evidence supporting all elements of a duress defense.

In his supplemental briefing on duress, Ibarra asserted that his post-arrest statements were sufficient to show that he was under an immediate threat of harm. Ibarra submitted a transcript of his post-arrest interview and an affidavit from his mother in support of his supplemental briefing. The transcript contained Ibarra's post-arrest statements to the ICE agents that he had been threatened by men who said they would kill him and his family if he refused to drive the vehicle into the United States. Ibarra also told the ICE agents that the threats began approximately one week before his arrest and that the men knew his wife's cell phone number. In addition, Ibarra stated that he was told he would be watched at the border and that, during both the initial stop at the border and the subsequent interview, he was afraid that the men who threatened him would learn what he was saying and harm him or his family.

Ibarra also provided an affidavit from his mother, Blanca Singh, who stated that, upon learning of Ibarra's arrest, she went to his apartment in Mexicali and spoke with his wife, Imelda Vasquez, who was very nervous and upset. According to the affidavit, Vasquez told Singh that, early in the morning on the day of Ibarra's arrest, two armed men came to the apartment and took Ibarra away. Singh also stated that Vasquez told her that the same two men previously came to the apartment and harassed Ibarra, asking for his green card.

At a March 15, 2010, hearing on the parties' motions in limine, the district court concluded that Ibarra had failed to make a prima facie showing of an immediate threat of harm, as required to present a duress defense, and stated that it would preclude the defense. Defense counsel opposed the district court's ruling, arguing that precluding the duress defense would violate Ibarra's Sixth Amendment right to present a defense, and clarified that he was not yet requesting a jury

instruction on duress. The district court then stated that if Ibarra presented admissible evidence at trial meriting a duress instruction, the court would consider giving a jury instruction on duress. When questioned whether it was ruling both that it would consider a duress instruction following the presentation of evidence at trial and also that evidence of duress would be precluded, the district court reiterated that a jury instruction on duress might be proper if Ibarra presented sufficient evidence of duress and noted that, based on the facts presented in the pretrial proffer, a duress instruction did not yet appear to be warranted.

During trial, the district court permitted Ibarra to introduce evidence of duress. Ibarra elicited testimony from the ICE agents and interpreters involved in his post-arrest interview describing the statements he made during the interview. These witnesses testified that Ibarra told the agents that men threatened to kill him and his family if he refused to drive the vehicle into the United States and that these threats began days before he drove the vehicle into the United States. The agents and interpreters also testified that Ibarra stated that he had been told he would be watched as he crossed the border and that he was afraid during the post-arrest interview. One of the interpreters also testified that Ibarra told them that the men who threatened him had his wife's phone number.

In addition, Ibarra presented the testimony of his mother, Blanca Singh. Singh stated that she went to Ibarra's apartment following his arrest where she spoke with Ibarra's wife, Vasquez, who appeared to be very nervous and upset. In addition, Singh testified that after speaking with Vasquez about what happened to Ibarra, she was concerned for Vasquez's safety and took Vasquez to her mother's house. The district court did not permit Singh to testify about the statements Vasquez made to Singh following Ibarra's arrest. Singh also testified that she owned the building where Ibarra and Vasquez lived and that, two days after Ibarra was arrested, she was contacted by another resident who told her that someone

had broken into Ibarra's apartment. Singh stated that, when she returned to Ibarra's apartment, the apartment door was broken, the apartment had been ransacked, and several knives, which did not belong to Ibarra, were placed throughout the kitchen and bedroom.

Following the conclusion of the evidence at trial, Ibarra requested a jury instruction on duress. The district court denied Ibarra's request, finding that Ibarra had not presented evidence sufficient to make a prima facie showing of an immediate threat of harm. The district court noted that it did not believe it could preclude a defense and found that, because there was some evidence related to duress, Ibarra could "argue it." The district court declined to "add to" Ibarra's defense by giving a duress instruction where Ibarra had failed to make a prima facie showing of duress.

Ibarra was convicted by a jury and sentenced to twenty-eight months in custody and three years of supervised release. This timely appeal followed.

## II.

Ibarra argues that the district court erred by not allowing him to present evidence of duress and refusing to instruct the jury on a duress defense. We review de novo a district court's decision to preclude a duress defense and deny a request for a jury instruction on duress. *United States v. Vasquez-Landaver*, 527 F.3d 798, 802 (9th Cir. 2008) (citing *United States v. Moreno*, 102 F.3d 994, 997 (9th Cir. 1996) (reviewing decision to preclude duress defense); *United States v. Shryock*, 342 F.3d 948, 987 (9th Cir. 2003) (reviewing denial of a jury instruction on duress)).

As an initial matter, the parties dispute whether the district court precluded the duress defense prior to trial. Ibarra asserts that the district court precluded him from presenting a duress defense, and the government asserts that the district court did

not preclude a duress defense and that Ibarra was permitted to present evidence of duress at trial.[2] The district court initially ruled that Ibarra failed to make a prima facie showing of an immediate threat of harm and that, as a result, the duress defense would be precluded. However, following a Sixth Amendment challenge to this ruling by Ibarra and Ibarra's clarification that he was not yet seeking an instruction on duress, the district court stated that it would rule on whether Ibarra presented sufficient evidence to warrant a jury instruction on duress after Ibarra presented evidence at trial. Ibarra was permitted to, and did, present evidence of duress at trial. Reviewing the record as a whole, it appears that the district court did not preclude evidence of duress, but rather permitted Ibarra to present evidence and argument on duress at trial.

While it appears that the district court did not preclude the duress defense prior to trial, because there is some ambiguity in the district court's ruling, we will nevertheless consider whether this pretrial ruling is correct, as well as whether the district court erred in declining to give a jury instruction on duress. Both the initial pretrial decision and the district court's refusal to instruct the jury on duress were based on essentially the same evidentiary showing.[3] Because the difference

---

[2]Ibarra argues that, as a result of the district court's ruling, he did not present a duress defense. Ibarra's defense at trial was that he did not know that drugs were in the car and only agreed to drive the car across the border because men threatened to kill him and his family if he refused. Ibarra offered the same theory of defense prior to the district court's pretrial rulings on duress.

[3]The only relevant evidence offered by Ibarra in his pretrial proffer that was not presented at trial was the statements Ibarra's wife made to his mother that two armed men took Ibarra away on the morning of his arrest and that the same two men previously came to the apartment and harassed Ibarra, asking for his green card. Ibarra presented these statements with his pretrial briefing on duress in an affidavit from his mother and relied on these statements to show that the men knew where he lived, that the threats were of an immediate harm, and that he lacked the opportunity to escape the harm on the day of his arrest. At trial, Ibarra's mother was not

between the evidence proffered before trial and the evidence presented at trial is not dispositive, we evaluate the district court's rulings (i.e., its rulings that Ibarra failed to make a prima facie case that would support either presenting a duress defense at trial or giving a jury instruction on duress) based on both the evidence in Ibarra's pretrial proffer and the evidence presented at trial.

## A.

**[1]** A defendant is not entitled to present a duress defense at trial or receive a jury instruction on duress unless the defendant makes a prima facie showing of duress in a pretrial offer of proof, *Vasquez-Landaver*, 527 F.3d at 802 (citing *Moreno*, 102 F.3d at 998-99), or in evidence presented at trial, *United States v. Jennell*, 749 F.2d 1302, 1305 (9th Cir. 1984). In order to make a prima facie showing for a duress defense or a jury instruction, a defendant must establish: " '(1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) lack of a reasonable opportunity to escape the threatened harm.' " *Vasquez-Landaver*, 527 F.3d at 802 (quoting *Moreno*, 102 F.3d at 997). In the absence of a prima facie showing of duress, evidence of duress is irrelevant and may be excluded, and a jury instruction is not appropriate. *Id.* (citing *Moreno*, 102 F.3d at 998-99; *Jennell*, 749 F.2d at 1305).

## B.

The district court did not err in finding that Ibarra failed to make the prima facie showing of duress necessary to present

---

permitted to testify as to the content of these out of court statements because the district court determined that the statements were inadmissible hearsay. She did, however, testify that someone had broken into the apartment, permitting the inference that the men who threatened Ibarra knew where he lived and posed an immediate threat of harm.

the defense at trial and receive a duress jury instruction. The district court found that Ibarra failed to proffer sufficient evidence of the first element of duress because the threatened harm was no longer immediate once Ibarra had an opportunity to notify authorities of the harm after reaching the border and being taken into the secondary inspection office. We may affirm the district court's evidentiary ruling on any grounds supported by the record. *See United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). The opportunity to surrender to the authorities on reaching a point of safety presents an opportunity to escape the threatened harm. *See United States v. Contento-Pachon*, 723 F.2d 691, 695 (9th Cir. 1984). We evaluate whether Ibarra made a prima facie showing of the third element of duress, that he lacked a reasonable opportunity to escape the threatened harm.

**[2]** Ibarra presented evidence that he was threatened in the days leading up to his arrest at the border. However, Ibarra did not introduce any evidence that he believed he could not trust law enforcement or safely contact the authorities. To the contrary, Ibarra introduced evidence at trial that he had several family members in law enforcement and that, during the post-arrest interview, he asked the ICE agents to contact law enforcement in Mexico on his behalf. In addition, Ibarra did not offer any evidence that he was under surveillance during the time between the initial threats and the day of his arrest. Ibarra did not explain why he did not contact law enforcement or make any other attempt to escape the threatened harm in the days leading up to his arrest. Ibarra thus failed to present evidence indicating that he lacked a reasonable opportunity to escape the threatened harm in the days leading up to his arrest. *See Moreno*, 102 F.3d at 997 (finding it was proper to preclude a duress defense where a defendant presented evidence that he was threatened several weeks prior to the commission of the crime and failed to present any evidence indicating that he lacked a reasonable opportunity to escape by fleeing or contacting the authorities during the time

between the initial threat and the criminal act); *Jennell*, 749 F.2d at 1306.

Ibarra also had an opportunity to escape the threatened harm when he was confronted by law enforcement at the border. *See Moreno*, 102 F.3d at 997-98. "Once a defendant . . . reache[s] a position where he can safely turn himself in to the authorities he . . . likewise ha[s] a reasonable opportunity to escape the threatened harm." *Contento-Pachon*, 723 F.2d at 695*; see also United States v. Verduzco*, 373 F.3d 1022, 1031 (9th Cir. 2004). In order to assert a duress defense in these circumstances, a defendant must present some evidence indicating that he "took the opportunity to escape the threatened harm by submitting to authorities at the first reasonable opportunity." *Contento-Pachon*, 723 F.2d at 695.

**[3]** We have held that a defendant has a reasonable opportunity to escape the threatened harm by surrendering to authorities when confronted at a point of inspection even where the defendant asserts that he is being watched by the people who threatened him and that threats have been made against his family. *See Moreno*, 102 F.3d at 997-98 (finding that where a defendant alleged he was being watched, "[t]he encounter with [the authorities] presented a clear opportunity for [the defendant] to save himself and alert authorities about the threat to his family"). While Ibarra asserted that he and his family were threatened and that he was told that he would be watched while he drove the vehicle into the United States, the encounter with the authorities at the border presented Ibarra with the opportunity to escape the threatened harm and notify authorities about the threats to his family. *See id.* Not only did Ibarra have an opportunity to alert authorities during the primary inspection, he also had an opportunity to alert authorities, after obtaining a position of even greater safety than we have previously found necessary, once he was escorted into the secondary inspection office, where he could have surrendered outside the view of any potential surveillance. *See id.* (finding that a defendant had an opportunity to escape the

threatened harm by surrendering to authorities while still within view of any potential surveillance). Once Ibarra had the opportunity to turn himself in, he likewise had the opportunity to escape the threatened harm. *See Contento-Pachon*, 723 F.2d at 695.

**[4]** A defendant takes "the opportunity to escape the threatened harm" where the defendant "cooperate[s] with authorities" at the first opportunity to do so without alerting an observer and "submit[s] to authorities at the first reasonable opportunity" by consenting to a search. *Id.* Conversely, a defendant who attempts to flee and physically resists capture rather than consenting to a search fails to avail himself of the opportunity to escape the threatened harm and cannot present a duress defense. *See Moreno*, 102 F.3d at 997-98. Here, Ibarra neither cooperated with the authorities nor attempted to flee. While Ibarra did not physically resist officers following the initial stop, Ibarra attempted to mislead the officer during the primary inspection, failed to notify authorities after he was removed to the secondary inspection office, and continued to attempt to mislead the ICE agents during the beginning of the interview. Ibarra did not proffer evidence indicating that he "took the opportunity to escape the threatened harm by submitting to authorities at the first reasonable opportunity." *See Contento-Pachon*, 723 F.2d at 695.

**[5]** Ibarra argues that, because his crime was essentially complete at the time he attained a position of safety, he was under duress at all relevant times. However, we have held that, where a defendant may surrender to authorities without being placed in immediate danger, the defendant has a sufficient opportunity to escape the threatened harm even where the defendant has essentially completed the crime. *See Moreno*, 102 F.3d at 997-98 (finding that a defendant had a reasonable opportunity to escape the threatened harm by surrendering to authorities at an airport after transporting drugs from California to Hawaii). Here, Ibarra had an opportunity to cooperate with the authorities after bringing the drugs into

the United States. Once Ibarra was removed to the secondary inspection office, prior to the discovery of the drugs and prior to his arrest, Ibarra was in a position of relative safety and had a reasonable opportunity to escape the threatened harm by cooperating with the authorities.

Ibarra also argues that *Contento-Pachon* controls this case and demands reversal. However, the facts and analysis in *Contento-Pachon* indicate that Ibarra's proffered evidence is insufficient to support a duress defense. In *Contento-Pachon*, the defendant presented evidence that he was forced to transport drugs into the United States by Colombian drug traffickers who threatened to kill the defendant and his family and told the defendant that they would be watching him as he transported the drugs into the United States. 723 F.2d at 693. The defendant also offered evidence that the drug traffickers knew personal information about the defendant and his family, including his address and the names of his wife and child, and that he did not report the threats to the police because he believed the Bogota police were corrupt. *Id.* at 693-94. The defendant asserted that he took "the first opportunity to cooperate with authorities without alerting the observer" by consenting to an x-ray search. *Id.* at 695. We held that because the defendant proffered evidence that he could not escape by alerting the allegedly corrupt authorities or fleeing the reach of the drug traffickers, there was "a triable issue of fact whether [the defendant] took the opportunity to escape the threatened harm by submitting to authorities at the first reasonable opportunity." *Id.*

**[6]** Unlike the defendant in *Contento-Pachon*, Ibarra did not proffer any evidence indicating that he could not escape the threatened harm either by contacting the authorities prior to the commission of the crime or cooperating with the authorities at the first opportunity. *See id.* at 695. Ibarra presented evidence that he had several family members in law enforcement and did not assert that he believed the authorities were corrupt or that it would be dangerous for him to contact

the authorities prior to the day of his arrest. *See Moreno*, 102 F.3d at 997 (finding that a defendant who failed to produce any evidence indicating that he could not seek help from law enforcement did not proffer sufficient evidence indicating that he lacked the opportunity to escape the threatened harm). In addition, rather than attempting to escape the threatened harm by cooperating with the authorities at the first opportunity, Ibarra attempted to mislead the primary inspection officer and the ICE agents. *See id.* at 997-98; *Contento-Pachon*, 723 F.2d at 695. Once Ibarra was confronted by the authorities and attained a position of safety, he had the opportunity to turn himself in to the authorities, and he likewise had a reasonable opportunity to escape the threatened harm. *See Moreno*, 102 F.3d at 997-98; *Contento-Pachon*, 723 F.2d at 695.

**[7]** Ibarra failed to present evidence demonstrating that he did not have a reasonable opportunity to escape the threatened harm as required to present a duress defense or receive a jury instruction on duress. *See Vasquez-Landaver*, 527 F.3d at 802. Because Ibarra failed to establish that he lacked an opportunity to escape the threatened harm, and a defendant must make a prima facie showing of all three elements of a duress defense in order to present the defense or receive a jury instruction on duress, we do not address the sufficiency of the evidence as it relates to the remaining elements. *See id.* at 803 n.4 (citing *United States v. Becerra*, 992 F.2d 960, 964 (9th Cir. 1993)).

## III.

**[8]** Ibarra failed to make a prima facie showing that he lacked a reasonable opportunity to escape the threatened harm either by contacting authorities prior to arriving at the border or by surrendering to authorities upon reaching a position of safety. Ibarra had a reasonable opportunity to escape the threatened harm both before arriving at the border and upon being taken into the secondary inspection office. The district court did not err in initially precluding Ibarra's duress defense

or in refusing to give a jury instruction on duress. For the foregoing reasons, we affirm the district court's decisions on duress.

**AFFIRMED.**

---

Chief Judge KOZINSKI, concurring in the judgment:

As the majority recognizes, "the district court did not preclude the duress defense prior to trial." Maj. op. at 17871. The evidence it excluded—Ibarra's post-arrest statements and his mother's statements about what his wife said—were inadmissible hearsay. We have no occasion to discuss whether the district court could properly have precluded a duress defense. I see this as a difficult issue that we should leave to a case where it matters.